**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                              )
MICHELLE ROGERS,              )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action No. 00-2452 (EGS)
                              )
RAY MABUS,¹                   )
                              )
          Defendant.          )
_____)
```

### MEMORANDUM OPINION

Plaintiff Michelle Rogers ("plaintiff" or "Rogers"), a former employee of the Department of the Navy, brings this Title VII sexual harassment action against the Secretary of the Navy, ("defendant"). On March 30, 2005, the Court denied defendant's motion to dismiss or, in the alternative, for summary judgment. Defendant has filed a motion for reconsideration of this decision. Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court **DENIES** defendant's motion for reconsideration.

**I. Background**

    **A. Factual Background**

Plaintiff, a former employee of the Department of the Navy, Engineering Field Activity Chesapeake ("EFACHES"), Construction Division, Washington Navy Yard, brings this Title VII action

---

¹ Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Mabus, in his official capacity as the Secretary of the Navy, is automatically substituted as the named defendant.

against defendant, claiming that she was the victim of sexual harassment and rape by her former immediate supervisor, Jasper Garner ("Garner"). Plaintiff is an African American female who is hearing and speech impaired. Pl.'s SOF at 13.[2] Plaintiff began working for the Department of the Navy in November 1987. Def.'s Statement of Material Facts Not in Dispute ("Def.'s SOF") ¶ 1. Garner was plaintiff's supervisor from 1994 to September 1998, at which time Garner was transferred to another division and Robert Silver ("Silver") became plaintiff's supervisor. Pl.'s Supp. SOF ¶ 1; Def.'s SOF ¶¶ 2-3.

Plaintiff alleges that Garner forced her to have sex with him or otherwise engaged in sexually offensive conduct beginning in April 1996 and continuing throughout the remainder of her tenure at the Navy. Pl.'s SOF at 13-14. Plaintiff contends that she reported the initial alleged assault to Cecilia Muhammad ("Muhammad"), her team leader,[3] and to Ellis Herndon ("Herndon"),

---

[2] In responding to defendant's motion for summary judgment, plaintiff filed her own statement of material facts in dispute, but did not respond to/dispute defendant's statements of fact pursuant to Local Civil Rule 7(h). Due to plaintiff's failure to properly respond to defendant's statement of facts, the Court gave plaintiff an opportunity to file a supplemental statement of material facts in dispute. Therefore, the citations herein refer to the respective statements of fact as "Pl.'s SOF" and "Pl.'s Supp. SOF." The Court has noted where facts continue to be in dispute.

[3] The parties dispute whether Ms. Muhammad was plaintiff's supervisor; however, it is clear that Ms. Muhammad had some leadership role. *Compare* Def.'s Mem. Supp. Mot. for Recons. ("Def.'s Mot. Recons.") at 6, *with* Pl.'s Opp'n to Def.'s Mot.

2

a supervisor in a different division, within weeks of the first alleged incident in April 1996. Pl.'s Supp. SOF ¶ 9. On March 5, 1999, plaintiff notified Silver of her sexual harassment charges against Garner. Def.'s SOF ¶ 14. Plaintiff alleges that Garner placed a call to her cell phone on approximately March 19, 1999 and that this call continued his harassment of her. Pl.'s SOF at 15. She sought formal EEO counseling on March 24, 1999. Def.'s SOF ¶ 14.

### B. Procedural Background

On March 30, 2005, the Court denied defendant's motion for summary judgment, finding that there were material issues of fact regarding whether plaintiff unreasonably failed to comply with defendant's sexual harassment policy.[4] On July 17, 2009, defendant filed a motion for reconsideration based on a new case from the D.C. Circuit, *Taylor v. Solis*, 571 F.3d 1313 (D.C. Cir. 2009)).[5] This motion for reconsideration is now ripe for resolution by the Court.

---

Recons. at 3.

[4] The Court also found that there were material issues of fact regarding whether plaintiff timely filed her EEO complaint; however, defendant is not requesting that the Court reconsider that portion of its decision.

[5] On February 23, 2006, the Court denied a previous motion to reconsider, finding that newly discovered evidence did not eliminate the material issue of fact.

## II. Legal Framework

### A. Standard of Review

#### 1. Motion for Reconsideration

Due to the interlocutory nature of the Court's order denying the motion for summary judgment, defendant's motion for reconsideration is governed by Federal Rule of Civil Procedure 54(b), which "differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b)." *Williams v. Savage*, 569 F. Supp. 2d 99, 108 (D.D.C. 2008) (citations omitted); *Judicial Watch v. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) ("A ruling that denies a dispositive motion . . . is an interlocutory judgment." (citations omitted)). "In particular, reconsideration of an interlocutory decision is available under the standard 'as justice requires.'" *Judicial Watch*, 466 F. Supp. 2d at 123 (citations omitted).

"'As justice requires' indicates concrete considerations" by the court, *Williams*, 569 F. Supp. 2d at 108, such as "whether the court patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." *In Def. of Animals v. Nat'l Inst. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (internal citation and quotation marks omitted).

4

"Furthermore, the party moving to reconsider carries the burden of proving that some harm would accompany a denial of the motion to reconsider." *In Def. of Animals,* 543 F. Supp. 2d at 76. "These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether reconsideration is necessary under the relevant circumstances.'" *Judicial Watch*, 466 F. Supp. 2d at 123 (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). Defendant's motion to reconsider is based on new authority; therefore, the Court considers "whether a controlling or significant change in the law has occurred." *In Def. of Animals*, 543 F. Supp. 2d at 75.

### 2. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Analysis**

The basis for defendant's motion to reconsider is a recent decision from the D.C. Circuit, *Taylor v. Solis*, 571 F.3d 1313. Defendant argues that *Taylor* narrows the rule outlined in *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998), and that a material issue of fact no longer exists regarding whether plaintiff unreasonably failed to take advantage of corrective opportunities. *See generally* Def.'s Mot. Recons. As explained below, the Court finds that material issues of fact still remain and, therefore, **DENIES** defendant's motion to reconsider.[6]

Title VII provides: "All personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on . . . sex." 42 U.S.C. § 2000e-16(a). An actionable harm for sexual harassment that has created

---

[6] The parties dispute whether plaintiff abandoned her retaliation claim by not responding to defendant's arguments in its motion for summary judgment filed on July 1, 2004, Docket No. 86. After multiple additional filings, which failed to resolve this issue, at a hearing on July 21, 2009, the Court directed plaintiff to file a response to defendant's motion to reconsider, which would not only address the *Taylor* decision, but which would also clearly set forth her retaliation claims, including specific support and citations to the record. Tr. of July 21, 2009 Status Hr'g 2:12-19, 6:10-8:3. Plaintiff's response to defendant's motion to reconsider and defendant's reply therefore address plaintiff's retaliation claims in addition to the motion for reconsideration currently pending before the Court. In an effort to minimize confusion going forward, the Court will address plaintiff's retaliation claims in a separate opinion.

6

a "hostile work environment" is caused by "harassment . . . sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986); *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("whether an environment is 'hostile' or 'abusive' can be determined only be looking at all the circumstances"). An affirmative defense to a hostile work environment claim exists for employers if they can prove: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer . . .." *Faragher,* 524 U.S. at 807-08; *accord Burlington Indus., Inc.*, 524 U.S. at 764-65.

In its motion for summary judgment, defendant claimed that it was entitled to the *Faragher* defense because defendant employees were not made aware of plaintiff's allegations until March 1999 when she filed a formal EEO complaint, at which time they made every reasonable effort to fully investigate plaintiff's claims and prevent further harassment. Def.'s Mot. Summ. J. ("Def.'s Mot.") at 20. Defendant also contended that plaintiff unreasonably failed to comply with the Division's sexual harassment policy by failing to promptly report any

offending behavior to a supervisor or an EEO officer. Def.'s Mot. Summ. J. at 23.

In its opinion denying summary judgment, the Court found that there were disputed issues of material fact because the record "contains references to conversations between plaintiff and her supervisory staff [Herndon and Muhammad] in April or May of 1996 suggesting that she made an effort to report Mr. Garner's conduct." *Rogers v. Gordon*, 362 F. Supp. 2d 269, 272 (D.D.C. 2005) (citing Pl's. Supp. SOF, Ex. 8 at 191-92 (Herndon Aff.); Ex. 10 at 27-29, 62 (Muhammad Dep.)).

### 1. *Taylor v. Solis*

Defendant asks the Court to reconsider its decision in light of *Taylor*, which addresses the issue of whether a plaintiff properly reported allegations of sexual harassment by informing a supervisor. 571 F.3d 1313. In *Taylor*, the plaintiff sued her employer, the Pension Benefit Guaranty Corporation, under Title VII alleging sexual harassment by her supervisors that created a hostile work environment. *Id.* at 1316. The sexual harassment policy in *Taylor* directed employees who believed they were sexually harassed to immediately contact an EEO Counselor or the EEO manager, who was to then investigate the charge and, if warranted, implement an appropriate remedy. *Id.* The plaintiff told a friend who was a team leader that she felt harassed; he did not advise her to go to the EEO counselor or do so himself.

8

*Id.* at 1316. After further incidents of alleged harassment, plaintiff eventually reported the conduct to the EEO office. *Id.*

The court affirmed the district court's finding that the employer had an affirmative defense under *Faragher* because the plaintiff's action of informing her friend of the alleged harassment was an unreasonable failure to use her employer's complaint procedure. *Id.* at 1318 (citing *Ellerth*, 524 U.S. at 765 ("any unreasonable failure to use any complaint procedure provided by the employer . . . will normally suffice to satisfy the employer's burden")). The D.C. Circuit noted that "[a] reasonable employee who believes and tells others she is being sexually harassed would report it if she knows - as [plaintiff] should have and apparently did know - a complaint procedure has been established for the purpose." *Id.* The *Taylor* court rejected plaintiff's argument that she effectively notified management of her complaint by informing her friend who was a team leader, finding that she "could not reasonably have believed talking to [him] was a substitute for using the agency's complaint procedure," because her employer's policy explicitly required her to report such conduct to an EEO officer or EEO manager. *Id.* at 1319. Thus, the *Taylor* court found that plaintiff's claim failed not because telling a team leader or supervisor is necessarily insufficient, but because the specific policy in place made telling a team leader or supervisor

9

insufficient, and plaintiff could not have reasonably believed that informing her friend of the alleged harassment complied with that policy.

## 2. The Sexual Harassment Policy

In contrast to *Taylor*, in the instant case, there was no written policy establishing a specific procedure for complaining about sexual harassment when the events in this case allegedly occurred.[7] The only evidence of a policy for reporting sexual harassment is the training given to employees at that time. This training included "an explanation that each act of discrimination or harassment should be reported either to a supervisor or directly to an EEO counselor." Def's Mot. Summ. J., Ex. 8; Decl. of Cynthia Sybert ("Sybert Decl.") at 2 (stating that between 1995 and 1999 she conducted annual training courses on EEO

---

[7] The sexual harassment policy in place at the time of the alleged harassment provided, *inter alia*:

> No individual shall - -
> . . .
> . . . [W]hile in a supervisory or command position, condone or ignore sexual harassment of which he or she has knowledge or has reason to have knowledge.
> . . .
> The prevention of sexual harassment exemplifies the Department of the Navy's goal to uphold the highest standards of leadership and personal conduct. Each leader/manager/supervisor is responsible and accountable for providing training and guidance to his/her personnel and taking prompt, appropriate corrective action upon encountering evidence of inappropriate conduct. . . ."

Def.'s Mot. Summ. J., Ex. 8, August 10, 1995 EFA Cheseapeake Policy on Sexual Harassment.

policies and procedures).

The record reveals a significant discrepancy within defendant's own pleadings as to whether plaintiff was required to report the conduct to "a" supervisor or "her" supervisor. *Compare* Mot. for Recons. at 2 ("Plaintiff knew that she needed to report it to her supervisor or to an EEO Specialist.") *with* Def.'s Mot. Summ. J. at 19 (the policy "instructed employees to report any offending behavior either to a supervisor or an EEO officer."); *see also* Def.'s Mot. Summ. J. at 6 (stating that the policy required an employee to report harassment to "the" supervisor). The parties have also provided conflicting information as to whether employees were supposed to report allegations of sexual harassment to both a supervisor *and* the EEO office, or if they could choose to report it to either one. The pleadings and exhibits of both parties at times use the "and" language, but in other places use the word "or," and contradict themselves regarding which is correct.[8]

Thus, the policy itself does not contain any guidance on how to report allegations of sexual harassment or to whom such

---

[8] *Compare* Mot. for Recons. at 2 ("Plaintiff knew that she needed to report it to her supervisor or to an EEO Specialist."); *Id.* at 3 n.1 ("[A] victim of sexual harassment was required to report any offending incidents to his or her supervisor or an EEO officer."), *with* Def.'s Mot. Summ. J. at 6 ("The policy on sexual harassment required a victim of such to 'report' any offending incidents 'to the supervisor and the EEO specialist.") (quoting Pl.'s Mar. 30, 2000 Admin. Dep. ("Rogers Mar. 30, 2000 Dep.")).

allegations should be made and the training allows employees to report complaints to either "a" supervisor or the EEO office. Accordingly, the Court finds that there are material issues of fact regarding the requirements of the sexual harassment policy in place at the time of the alleged conduct.

### 3. Plaintiff's Actions of Telling People in Management About the Alleged Harassment

Assuming, as the Court must at this stage of litigation, that the policy allowed an employee to report to a supervisor, regardless of whether that person was plaintiff's direct supervisor, the Court must now determine whether plaintiff's actions were reasonable. As discussed below, a material fact still exists regarding whether plaintiff reasonably believed her actions of telling two people in management roles constituted compliance with the sexual harassment policy in place.

Plaintiff asserts that, soon after the first alleged incident of rape, she contacted her team leader, Cecilia Muhammad, to report the incident. Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n Summ. J.") at 6. Muhammad admits that plaintiff had a discussion with her about the situation between herself and Garner, but states that plaintiff said she was "involved" with Garner. Muhammad Dep. at 28-29. Muhammad stated in her deposition that she told plaintiff that it "was between them" and that she had nothing to do with it. *Id.* at 28. Muhammad also stated that she "felt like [plaintiff] wanted to

get a response from [her]." *Id.* Muhammad did not report the conversation or do anything further regarding the conversation with plaintiff. The Court finds that, while it is possible a juror could conclude that this was not a report of harassment, but rather was just someone talking about her intimate relationship, a reasonable juror could also conclude that this "attempt" to report the conduct was sufficient and that Muhammad's actions of telling plaintiff that "that was between them" while admitting that plaintiff wanted to get a response from her lacked the reasonable care necessary for a *Faragher* defense.

Plaintiff also went to Herndon, a supervisor in another department, to inform him of Garner's alleged conduct. Pl.'s Opp'n at 6. Herndon confirmed in an affidavit during the Navy's investigation that plaintiff told him of unwanted sexual advances by Garner and that he did not report the conduct or investigate further. Pl.'s Supp. SOF, ex. 8, Herndon Aff. at 191:5-194:2. Herndon also acknowledged in his affidavit that under the procedure in place, a supervisor who receives a report of sexual harassment is required to initiate an investigation. *Id.* at 196:8-16.

Pursuant to *Taylor*, plaintiff must act as a reasonable employee would act if she believed she was being sexually harassed. Compliance with the agency's sexual harassment

13

policies is required, as well as prompt reporting of the incident(s). 571 F.3d at 1319. Defendant argues that plaintiff knew the sexual harassment policy required her to report alleged harassment to her supervisor and admitted that she did not follow it. Def.'s Mot. Recons. at 2. Is support of its argument, defendant cites Plaintiff's response to defendant's Requests for Admission, in which defendant claims she admits that the policy was to report sexual harassment "to a supervisor and an EEO counselor." Def.'s Mot. Summ. J., Ex.9, Resp. to Requests for Admission #9. Defendant also cites plaintiff's deposition for support that she was aware of, but did not follow, the policy. Def.'s Mot. Recons. at 7.

The Court disagrees with defendant's characterization of the evidence. In fact, plaintiff's deposition further supports the Court's finding that there are material issues of fact regarding the policy in place and plaintiff's understanding of that policy. For example, in her deposition plaintiff said that she was supposed to report any instance of sexual harassment to "the" supervisor *and* the EEO Specialist. Def.'s Mot. Summ. J., Ex. 2; Rogers Mar. 30, 2000 Dep. at 345:19 (emphasis added). Defense counsel followed that statement by asking: "to *your* supervisor and the EEO specialist?" to which plaintiff responded yes, and

then agreed that she did not do so.[9]  *Id.* at 345:20-346:1.  Later in the deposition, plaintiff was asked "you were told to report any incidents of sexual harassment to supervisors *or* to the EEO office.  Is that correct?"  *Id.* at 370:15-18 (emphasis added).  She responded "yes."  *Id.* at 351:15-21.  Thus, there is conflicting information within the deposition regarding plaintiff's understanding of the policy.

These excerpts (and the deposition contains several others like them) reveal nothing more than profound confusion about the complaint-reporting policy in place at the time the alleged events occurred.  Accordingly, the Court finds that, given the absence of a written policy regarding how allegations of sexual harassment were to be reported and the conflicting information presented by the parties regarding what that policy actually was, there is a material issue of fact as to the substance of the policy and whether plaintiff's actions of telling a supervisor in a different division and her team leader were reasonable.  The Court finds this case is easily distinguishable from the situation in *Taylor* because there, plaintiff's actions of telling her friend clearly did not meet the explicitly stated policy of

---

[9]  Plaintiff was also asked whether she thought that by telling Mr. Herndon that she was notifying management; she responded "I guess, I mean, I guess I would think that he would notify management."  *Id.* at 350:17-20.  A reasonable jury could find this statement indicates a reasonable belief that telling Herndon did comply with the sexual harassment policy requiring her to inform a supervisor.

15

the defendant.

The Eighth Circuit's finding in *Ogden v. Wax Works, Inc.*, further supports the Court's conclusion. 214 F.3d 999 (8th Cir. 2000). The court in *Ogden* found that a reasonable jury could have concluded that plaintiff "took advantage of the 'opportunities' afforded by Wax Works and/or attempted to 'avoid harm otherwise'" because she complained to a member of defendant's management "arguably in accordance with the company's sexual harassment policy." *Id.* at 1007. Similar to the present case, the policy in *Ogden* stated that an employee was "encouraged" to report any alleged violations to "a member of management or directly to the Director of Human Resources." *Id.* at 1005. Here too, plaintiff "arguably" followed the sexual harassment policy in place.

Taking all facts in the light most favorable to plaintiff, as the Court must at this stage, the Court finds that material issues of fact still exist regarding what the policy was and whether plaintiff reasonably believed that her actions complied with the policy.

## III. CONCLUSION

Accordingly, for the reasons stated, the Court **DENIES** defendant's motion for reconsideration.

**SO ORDERED.**

**Signed:    EMMET G. SULLIVAN
            UNITED STATES DISTRICT JUDGE
            MARCH 29, 2010**